## C. W. Elphicke et al. v. Iroquois Furnace Co.

1. TRIALS—*By the Court Without a Jury.*—Where a trial is by the court without a jury and the judge errs as to the preponderance of the evidence, his finding will be reversed and judgment entered in this court.

Assumpsit, on a contract for ore from the mines, etc. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge presiding. Heard in this court at the October term, 1901. Reversed and judgment entered in this court. Opinion filed May 22, 1902.

C. E. KREMER and C. W. GREENFIELD, attorneys for appellants.

DEFREES, BRACE & RITTER, attorneys for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Appellants brought an assumpsit upon an accepted contract dated February, 1891, for freighting 60,000 tons of ore from the mines to the furnace of appellee in South Chicago, at an agreed price, "Free on board vessel except trimming, and the unloading to be free of expense to vessel. In view of the low rates given you it must be understood that vessels shall have quick dispatch loading and unloading. * * * Ore to be freighted between the opening of navigation and the 30th of October next, as we may agree."

In accepting this contract, under date of February 27, 1891, appellee says: "Since seeing your Mr. Fitch we have let the contract for the Champion Hoist, and work of erection begins next Monday."

The cause was submitted to the court for trial.    Upon the hearing the court found the issues for the appellee and rendered judgment for costs against the appellants, from which judgment this appeal is taken.

We have carefully read the record in this cause and have come to the conclusion that the learned trial judge is mistaken as to the preponderance of the evidence.    It is clear to us that the appellee failed to keep its contract with the appellants, and that the latter, before the close of navigation in 1891, completed the performance of its part of the contract.

Two vessels, the "Josephine" and the "Parker," with the assent of the appellee, were selected by the appellants to carry the ore.    This they could have easily done had there been no delays.    As things turned out, the appellants, in September, 1891, were compelled to put on an additional vessel, the "Ohio," in order to complete their contract.

It was more than six weeks after the opening of navigation, in the spring of 1891, before appellee directed the " Parker " to start for her first cargo; and two weeks later it gave a like order to the "Josephine."    Having put these vessels into service, the appellee is thereby estopped to say that it was not ready to unload them when they respectively arrived at the dock in South Chicago.    The evidence shows that the "Parker" arrived June 6th and was not unloaded until the 23d of the same month.    Other delays, of shorter intervals, were continually occurring during the entire season to this vessel or to its companions.    During the time this freighting was being done, from June until November, appellants were continually complaining to appellee of these delays, and its officers were making excuses for their defaults.    September 24, 1891, appellants, by letter, set forth their claim for damages, amounting " to many thousands of dollars, of which damage, we

have no reason to doubt, you will meet us in a just and equitable spirit to adjust and pay." In reply, the agent of appellee wrote that he had referred the matter to the "ex-president of the company for his advice, and on receipt of his reply will take up the matter with our board of directors." Under these circumstances appellants are not estopped to sue for the damage caused solely by these delays, for the reason that they did not note such claim upon their bills of lading, nor that they accepted the freights earned at the close of each voyage.

These vessels were set apart, by the concurrence of the parties, to do this carrying. No *per diem* was agreed upon as to the value of their services. Under the general rule such value is determined by what these vessels could reasonably earn in the market during the season of 1891; but as there is no evidence in this regard other than that to be inferred from the contract of the parties, it may be reasonably inferred that they would have earned in the market the compensation agreed upon in this special contract.

The evidence shows that the "Parker," carrying an average of 1,300 tons, with "quick dispatch" in loading and unloading, would make a round trip in eight or nine days; the "Josephine," carrying an average of 1,150 tons, in four or five days; and the "Ohio," carrying an average of 1,360 tons, in four and one-half days.

The evidence is stated most favorably for the appellee when twenty-four hours is taken as "quick dispatch" in the loading or in the unloading of each of these vessels. In the following computation we exclude Sundays and night work.

The evidence shows during the season:

That the "Parker" was delayed at least twenty-five days, or three trips of 1,300 tons each=3,900 tons at 50c. per ton, the agreed freight.................. $1,950
Less towing charges, $50 per trip........:...... 150

$1,800

That the "Josephine" was delayed at least seven

days, or one and one-half trips of 1,150 tons each=
1,725 tons at 50c. per ton, the agreed freight ...... $862.50
  Less the cost of coal at $90 per trip............. 135.00

                                                       $727.50

That the "Ohio" was delayed at least nine days,
or two trips of 1,360 tons each=2,720 tons at 50c. per
ton, the agreed freight........................... $1,360
  Less the cost of coal at $80 per trip ............. 160

                                                       Total damages, $3,727.50.

The judgment of the Circuit Court is therefore reversed,
and judgment will be entered in this court in favor of the
appellants for the sum of $3,727.50 and costs.

Reversed, and judgment here.